UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONEMAUGH STAR PLAN WELFARE BENEFIT PLAN & TRUST; and BENEFIT PLAN ADVISORS, LLC,<br>    Plaintiffs,<br><br>v.<br><br>ARMAND "A.J." FISHER; MICHAEL L. MILLMAN; KENNETH PALMER; NUTMEG BENEFIT PLAN & TRUST; NUTMEG BENEFIT GROUP, LLC; MICHAEL L. MILLMAN LIMITED; THE FINANCIAL GROUP OF CONNECTICUT, INC.; MAFFE FINANCIAL GROUP, INC.; and NATIONAL LIFE INSURANCE COMPANY,<br>    Defendants. | Civil Action No.<br>3:07cv00831 (SRU) |

## **RULING ON MOTIONS TO DISMISS and MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF**

This case arises out of competition between two providers of deferred compensation benefit plans. The principal issue addressed in this decision is whether the court enjoys subject matter jurisdiction to hear this dispute. Because I conclude that there is no federal jurisdiction over the claims, the defendants' motions to dismiss are granted.

**I.    Background**

For present purposes, the following facts are taken as true.

    A.    <u>The STAR Plan</u>

Conemaugh Health System, located in Johnstown, Pennsylvania, is the largest health care provider in West Central Pennsylvania. The Conemaugh STAR Plan Welfare Benefit Plan &

Trust ("STAR Plan") allows participating Conemaugh Health System employees, including doctors and other health care professionals, to renegotiate their compensation and turn a portion of their total compensation package into a deferred benefit. The STAR Plan includes life insurance for participants. Ultimate beneficiaries of that life insurance include the Plan participant, the participant's heirs, and an entity called the Conemaugh Foundation. Through that life insurance, participation provides a "death benefit" for the Plan participant.

The plaintiffs allege that the STAR Plan was established at a time when the Internal Revenue Code allowed for "split-dollar" arrangements, where two parties (in this instance, the participant and the Plan itself) split the premium payments, cash value of the policy, ownership of the policy, and resulting death benefit. Under the terms of the STAR Plan, participants can put an unlimited amount of pre-tax money into the plan, borrow against it at any point, and cash out the plan at death or at age 80, all without suffering tax consequences at any point, except for paying tax on interest earned by the money in the Plan. That is, according to the plaintiffs, what makes STAR Plan participation an attractive deferred compensation option: money goes in pre-tax, accumulates tax-free, is paid out tax-free, and participants can borrow from their plan assets at any point without penalty. The STAR Plan even advances premium payments: under the terms of the Plan, a participant owns his own policy but then collaterally assigns it to the Plan, which provides the premium payment.

B.  <u>Kenneth Palmer</u>

From March 1998 through January 2005, Kenneth Palmer was an employee of an affiliate of Benefit Plan Advisors, LLC (" BPA") in the area of "Broker Relations." Palmer assisted BPA in the creation, sponsorship, and administration of the STAR Plan, including handling

communications with Conemaugh Health System and brokers involved with the plan.

In the course of his duties as a BPA-affiliated employee, Palmer had access to confidential information in the form of computer programs, lists, contact information, client account information, price and cost data, marketing information, and other specialized information pertinent to the operation and facilitation of the STAR Plan.

In or about January 2005, while he was still a BPA-affiliated employee, Palmer entered into an agreement and joined with Michael Millman, an insurance broker and competitor of the plaintiffs, to establish the Nutmeg Benefit Plan & Trust ("Nutmeg Plan") and Nutmeg Benefit Group, LLC ("Nutmeg Group"), direct competitors of BPA and the STAR Plan.

C. Plaintiffs' ERISA Claims

According to the plaintiffs, in 2003, following changes to the Internal Revenue Code, tax-free split-dollar arrangements, such as they describe the STAR Plan to be, were no longer permissible, making the STAR Plan uniquely valuable for participants. Because the STAR Plan predated those regulatory changes, it was "grandfathered in" and retained the tax benefits that made it so attractive. The Nutmeg Plan, on the other hand, was established after those regulatory changes and therefore could not offer the same tax advantages as the STAR Plan. BPA and the STAR Plan claim, however, that the Nutmeg Plan made misrepresentations to plan participants that the Nutmeg Plan was as good as or better than the STAR Plan, and that Conemaugh Health Systems endorsed participants' moving from the STAR Plan to the Nutmeg Plan. The present record in this case is not entirely clear, but it appears that the STAR Plan previously had as many as 19 participants and as much as $5 million in plan assets. A significant portion of that money has left for the Nutmeg Plan, along with all but two participants.

Plaintiffs STAR Plan and BPA (collectively, "Conemaugh") have sued defendants Armand "A.J." Fisher, Michael Millman, Kenneth Palmer, Nutmeg Plan, Nutmeg Group, Michael L. Millman, Limited, and The Financial Group of Connecticut, Inc. (collectively, the "Nutmeg defendants"), claiming damages for breach of fiduciary duties under ERISA. In addition, the plaintiffs have asserted claims for injunctive relief under ERISA against the Nutmeg defendants as well as against Maffe Financial Group, Inc. ("Maffe") and National Life Insurance Company ("National"), seeking to enjoin the defendants from inducing the remaining STAR Plan participants to switch to the Nutmeg Plan. The plaintiffs also raise a number of state law business tort claims against the Nutmeg defendants.

Regarding the ERISA claims, the plaintiffs' contentions are as follows: (1) the Nutmeg defendants are fiduciaries under ERISA, and have breached fiduciary duties owed to the plaintiffs and the STAR Plan Participants; (2) the plaintiffs are ERISA fiduciaries and can bring suit under ERISA on behalf of present and former STAR Plan participants for that breach; and (3) recoveries for ERISA fiduciary breaches flow to the ERISA Plan rather than individual participants, so the defendants would be liable for their breach to the plaintiffs rather than to individual participants. The plaintiffs also seek equitable relief enjoining the Nutmeg Defendants from further breaches and enjoining Maffe and National from facilitating further breaches, as well as rescission and disgorgement.

## II. Discussion

The respective defendants have filed five motions to dismiss the complaint for lack of subject matter jurisdiction. Each motion to dismiss makes substantially the same argument – that because the plaintiffs have not properly raised claims under ERISA, the federal courts lack

4

subject matter jurisdiction over this action, and the plaintiffs' claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

On July 26, 2007, I heard oral argument on the defendants' motions to dismiss, as well as the plaintiffs' motions for a preliminary injunction and temporary restraining order based on the conduct alleged in the complaint. For the reasons discussed below, the defendants' motions to dismiss are GRANTED; plaintiffs' motions for preliminary injunctive relief are DENIED, without prejudice to refiling in state court.

The parties have focused extensively, in their written and oral arguments before me, on the question of the plaintiffs' fiduciary status and whether they are permitted to raise claims as fiduciaries. Because the plaintiffs do not meet the functional requirements of ERISA fiduciaries that Congress and the federal courts have laid out, I hold that they are not fiduciaries and thus cannot bring suit as fiduciaries of the STAR Plan. Even if the plaintiffs were fiduciaries of the STAR Plan, their claims would still fail due to their failure to establish that the defendants owe current or former STAR Plan participants fiduciary duties.

A. Legal Standard

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate it. Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiffs, as the parties asserting subject matter jurisdiction, have the burden of establishing by a preponderance of the evidence that it exists, *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (citation omitted), and the court should not draw argumentative inferences in their favor. *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l*, 968 F.2d 196, 198 (2d Cir. 1992) (citation omitted). When

5

considering a motion to dismiss for lack of subject matter jurisdiction, the court "must determine whether or not the factual predicate for subject matter jurisdiction exists." *Tilley v. Anixter Inc.*, 283 F. Supp. 2d 729, 733 (D. Conn. 2003) (citation omitted). In making a determination of a motion to dismiss under Rule 12(b)(1), a court is not "limited to the face of the complaint, but may consider evidence, including affidavits submitted by the parties." *Id*. at 733 (citing *Robinson v. Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001)).

B.  Plaintiffs as Fiduciaries Under ERISA

The plaintiffs have brought suit in this case under the Employment Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, codified at 29 U.S.C. §§ 1001, *et seq*. The Supreme Court has explained that "ERISA carefully enumerates the parties entitled to seek relief under [29 U.S.C. § 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action." *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983); 29 U.S.C. § 1132(a). Second Circuit case law makes clear that this list of plaintiffs with standing to sue is exclusive. *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 121 (2d Cir. 2002). "Absent a valid assignment of a claim, at least, non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation." *Id.*

Although the list of who may sue under ERISA is a short one, "Congress intended ERISA's definition of fiduciary to be broadly construed," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (internal quotation marks omitted). Even given that broad construction, in order to survive the defendants' motions to dismiss under Rule 12(b)(1), the plaintiffs are still required to prove by a preponderance of the evidence that either the Plan itself or BPA is a

6

fiduciary.

Courts have made clear that, under ERISA, the question of who is a fiduciary depends on how a certain entity actually functions, rather than on its title or position. "[A] person is a fiduciary with respect to the plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan." *Vanity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (internal quotations omitted); 29 U.S.C. § 1002(21)(A); *see also Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006). Given such a functional definition, for the plaintiffs here to survive the Rule 12(b)(1) motion to dismiss, they must show that they exercised discretionary authority or control regarding plan management or administration. They have not done so.

> i. *The STAR Plan does not have standing, as a fiduciary or on its own, to bring an ERISA claim*

In their opposition to the motions to dismiss, the plaintiffs argue that the STAR Plan itself is an ERISA fiduciary and that the complaint sufficiently alleged "that the Conemaugh [STAR] Plan is an ERISA fiduciary of the Plan itself, Plan Participants and Plan beneficiaries, and thus has standing to sue under ERISA." Opp. at 13. However, the paragraphs of the complaint that plaintiffs cite to, paragraphs 4, 35, 52, 57, and 62, simply state that the STAR Plan is a fiduciary to the Plan participants. The plaintiffs fail to indicate any manner in which the STAR Plan exercises or has exercised discretionary authority or control. Those sections of the complaint to which they refer, without more, are conclusions of law rather than facts that, if true, would support the plaintiffs' argument.

The plaintiffs additionally argue that, as some courts have stated, fiduciary status under ERISA is a mixed question of law and fact and, as such, not appropriate for decision in a motion to dismiss. Opp. at 9-10. *Frommert*, 433 F.3d at 271; *LoPresti*, 126 F.3d at 39; *Trs. of Teamsters Local Union No. 443 Health Servs. & Ins. Plan v. Papero*, 485 F. Supp. 2d 67, 71 (D. Conn. 2007). Here, however, even after I accept as true all factual assertions in the complaint, the allegations fail to establish that the STAR Plan is a fiduciary. Determination of fiduciary status is therefore appropriate as a matter of law. "[A]s all factual assertions relied on in this Court's decision are as alleged in plaintiff's complaint, or as stated in the relevant plan documents attached to plaintiff's complaint, and as the plaintiffs have not identified any areas in which the facts are disputed, the issue is appropriately viewed as a question of law appropriate for disposition on a motion to dismiss." *Mortgage Lenders Network USA, Inc. v. Coresource, Inc.*, 335 F. Supp. 2d 313, 317 (D. Conn. 2004).

In their opposition, plaintiffs contend that "the Complaint alleges control of plan assets, which is both a paramount fiduciary function under ERISA and a key to Plaintiffs' fiduciary status," citing to paragraph 33 of the Complaint. Opp. at 10. Paragraph 33 of the complaint states that

> if STAR Plan Participants switch to the Nutmeg Defendants' non-grandfathered Nutmeg Plan and take the National Life Policies out of the STAR Plan, the STAR Plan Participants will likely end up being subject to immediate taxation due to the termination of the existing "split-dollar" arrangement. Even worse, the STAR Plan - which holds promissory demand notes from all of the STAR Plan Participants - will be forced to call in those notes. As a result, the STAR Plan Participants will be required to pay to the STAR Plan all amounts contributed since inception of the STAR Plan in 1999.

Although that paragraph does allege that the STAR Plan holds promissory notes from the participants, it does not allege discretionary control over those assets. If anything, this paragraph

indicates that the STAR Plan could be forced to act in a certain manner, rather than exercising discretion with respect to the promissory demand notes. The portion of the complaint that the plaintiffs rely on fails to demonstrate that the STAR Plan is functionally a fiduciary.

The plaintiffs also argue that, despite commenting in *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 n.8 (2d Cir. 1983), that "[w]e find it difficult to imagine a situation in which a fund could fulfill" the role of a participant, beneficiary or fiduciary, the Second Circuit did not foreclose the possibility that the STAR Plan could be a fiduciary in this case. Although *Pressroom* may not be dispositive on that question, absent sufficient factual allegations that the Plan is a fiduciary, as discussed above, it cannot bring claims as an ERISA fiduciary.

    ii.  *BPA does not have standing to bring ERISA claims as a fiduciary*

The plaintiffs argue that BPA has standing to sue as an ERISA fiduciary because "BPA, as the sponsor and legal fiduciary of the Plan, has authority or control over the management of the Plan." Opp. at 10-11. In support, plaintiffs cite to two paragraphs of the complaint, paragraphs 6 and 18, that state that "BPA is the sponsor of the STAR Plan." The complaint, however, does not allege any facts that would support the claim that BPA functionally serves as a fiduciary. Because the defendants have brought motions to dismiss the complaint under Rule 12(b)(1), I consider evidence submitted by the parties to help determine whether subject matter jurisdiction exists. That evidence includes an affidavit from Daniel Carpenter, who allegedly created and designed the STAR Plan (Carpenter Aff. at ¶ 2), in support of the proposition that BPA is a fiduciary. Plaintiffs rely on two paragraphs of the Carpenter affidavit. The first, paragraph 6, states that BPA "is the Sponsor of the Plan and the Plan's legal fiduciary. . . . [With]

9

discretionary authority and control as to the decision-making, administration and servicing of the Plan, including appointing, retaining, monitoring and terminating the Plan Administrator and/or other fiduciaries, and thus has a fiduciary responsibility to protect the Plan itself, Plan participants and Plan beneficiaries." The second paragraph, paragraph 17, does not mention BPA at all.

Even taken in the light most favorable to the plaintiffs, Carpenter's statements and the paragraphs of the Complaint identified above do not prove by a preponderance of the evidence that BPA is a fiduciary with standing to sue under ERISA. Even if BPA is the sponsor of the STAR Plan, that fact alone does not confer fiduciary status on BPA. *See, e.g., Beck v. Pace International Union*, 127 S. Ct. 2310, 2316 (2007) (holding that sponsor and administrator of ERISA plan only acted in fiduciary capacity when acting as administrator, not sponsor); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 433 (1999) ("without exception, plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries") (internal quotation marks omitted) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)). As discussed above, an entity is an ERISA fiduciary when it exercises functional control over the Plan and its assets. The sponsor of an ERISA plan, without more, does not meet that standard.

Carpenter's affidavit is insufficient to establish that BPA exercised discretionary control over the plan. The power to appoint, change or terminate a plan administrator, without more, does not confer fiduciary status. *St. Francis Hosp. and Medical Center v. Blue Cross & Blue Shield of Connecticut, Inc.*, 776 F. Supp. 659, 661 (D. Conn. 1991).

Plaintiffs similarly cite in their opposition to paragraphs 4, 6, 18, 35, 52, 57 and 62 of the complaint, which consist mainly of conclusory statements that BPA is a fiduciary, and at times

10

fail to mention BPA specifically at all. The factual statements and legal assertions that the plaintiffs have made fail to establish this Court's subject matter jurisdiction.

C. <u>Defendants as Fiduciaries Under ERISA</u>

Even if the plaintiffs were fiduciaries under ERISA and accordingly did properly evoke this court's subject matter jurisdiction, their claims against the Nutmeg defendants for breach of fiduciary duties fail unless the Nutmeg defendants actually owed fiduciary duties to the plaintiffs or the STAR Plan participants. Because the Nutmeg defendants did not owe fiduciary duties to current or former STAR Plan participants, the plaintiffs' claims fail.

The plaintiffs allege that "[t]he Nutmeg Defendants are ERISA fiduciaries and owe Plaintiffs and the STAR Plan Participants and beneficiaries numerous and substantial fiduciary duties." Compl. at ¶ 52. The plaintiffs do not, however, allege any facts that would support those assertions. There is no allegation that the Nutmeg defendants exercise any discretionary authority or discretionary control with respect to STAR Plan assets or management, or that the Nutmeg defendants have any discretionary authority or responsibility in the STAR Plan's management. *Vanity Corp.*, 516 U.S. at 498; 29 U.S.C. § 1002(21)(A).

In addition, the plaintiffs do not cite any authority or make any argument why the Nutmeg Defendants owe the Plan itself any fiduciary duties under ERISA. The closest the plaintiffs come to doing so is an argument in their opposition that such duties exist:

> First, the doctors that may have "left" the Plan remain "participants" under ERISA. Second, the Plaintiffs' claims are based upon fraudulent conduct which occurred while those doctors were participants in the Conemaugh Plan. In other words, any Plan Participants who may have left the Conemaugh Plan would still be participants in the Conemaugh Plan but for the fraudulent conduct of the Nutmeg Defendants. Given the linkage between the status of some Plan Participants and the alleged conduct of the Nutmeg Defendants, the Plaintiffs have a right and obligation to act to prevent future and

11

> continued harm to such Plan participants. Finally, even assuming, for the sake of argument, that some doctors no longer satisfy the statutory definition of a "participant" such as to give rise to a duty on the part of Plan fiduciaries, those doctors would still be entitled to "participant" standing, and the Plaintiffs, by extension, to fiduciary standing on their behalf.

Opp. at 21. The plaintiffs provide no legal or factual support, and I am not aware of any, for the contentions that former plan participants somehow remain plan participants after leaving, or that either the STAR Plan or the Nutmeg Plan has a duty to prevent participants from switching plans. Participants are free to make their own decisions regarding which plan to join, and any fiduciary duties that either plan owes to participants are limited to the individuals' participation in that plan. In other words, neither plan has a duty to ensure that each participant makes the "correct" or "best" choices; the two plans are marketplace competitors who compete for participants in the course of business. The plans must compete with each other fairly, and a failure to do so may give rise to a number of state law causes of action. Without more, however, unfair competition does not implicate fiduciary duties for either plan at issue here, and does not give rise to a cause of action under ERISA.

The plaintiffs base their argument that the doctors who have switched plans may still be considered STAR Plan participants under ERISA on cases that are distinguishable from the case at bar because they present individuals who, under the statute, "may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7); *see Mullins v. Pfizer*, 23 F.3d 663 (2d Cir. 1994). As *Mullins* notes, "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." 23 F.3d at 667 (citing *Firestone Tire & Rubber Co.*

*v. Bruch*, 489 U.S. 101, 117-18 (1989)). Here, there is no indication that the doctors who enrolled in the Nutmeg Plan retain any benefits under the STAR Plan. The doctors decided to enroll in a different retirement savings plan, and nothing suggests that they have prospective rights under the STAR Plan that will mature in the future or that they intend to enter into their own suits for benefits.

Under ERISA, "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b); *see also Steinman v. Hicks*, 252 F. Supp. 2d 746, 755 (N.D. Ill. 2003). A claim for breach of fiduciary duties cannot lie where, as here, any alleged breach occurred before the defendant owed participants a duty.

Even if the Nutmeg Plan were a fiduciary of current or former STAR Plan participants, those participants exercised control to switch plans of their own accord. The plan participants in this case are comparable to the plaintiff in *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005), who left her job, discontinued COBRA coverage, and then sought to bring an ERISA claim. The Second Circuit, holding that the plaintiff was not a participant in the ERISA plan in which she had previously participated, stated that "[p]articipants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed." There, as here, the "participant" in question voluntarily left her plan. At that point, any duties that the plan fiduciaries had regarding the plaintiff ceased.

As indicated above, in order for participants to show that they may be eligible for benefits, giving rise to fiduciary duty claims despite not participating in an ERISA plan at the time those claims are brought, they must have a colorable claim that (1) they will prevail in a suit

13

for benefits, or (2) eligibility requirements will be fulfilled in the future. *Firestone*, 489 U.S. at 117-18. "[T]he term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Id*. at 117 (internal citations and quotation marks omitted). Those circumstances neither contemplate nor include the claims the plaintiffs allege here, where participants have voluntarily left one plan in favor of another. Because the STAR Plan does not owe fiduciary duties to former participants who have switched to the Nutmeg Plan, and because the Nutmeg Plan does not owe fiduciary duties to the STAR Plan or its remaining participants, the plaintiffs' fiduciary duties claims are without merit.

        D.      <u>The Plaintiffs' Alleged Damages</u>

As the Supreme Court has stated, "[a] fair contextual reading of [ERISA] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). The harms that ERISA protects against, then, are harms that, although they may have an impact on plan participants, more directly harm the plan and its assets. Because of that, in ERISA suits alleging a breach of fiduciary duty to plan participants, "the potential personal liability of the fiduciary is to make good to such plan any losses to the plan . . . and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." *Id.* at 140 (internal citations and quotation marks omitted).

The plaintiffs argue that (1) they are entitled to bring suit as STAR Plan fiduciaries under

14

ERISA section 502(a)(2), which permits fiduciaries to sue under ERISA section 409, and (2) defendants are liable to the plan for their alleged breaches of fiduciary duties under section 409.[1] As the relevant case law indicates, damages awarded for breach of ERISA fiduciary duties (as plaintiffs seek here) under ERISA section 409 flow to ERISA plans because and to the extent that ERISA protects plans and their assets. *Id.*, 29 U.S.C. § 1109.

For the plaintiffs here to sustain a breach of fiduciary duties claim under ERISA section 409, they must adequately allege harm to the STAR Plan, not just that participants were unfairly or wrongfully induced to leave the plan. *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Here, plaintiffs allege in relevant part only that "[b]ecause recoveries for ERISA fiduciary breaches must inure to the benefit of the plan as a whole, rather than to individual participants or beneficiaries, the STAR Plan has suffered damages of and is entitled to recover $5 million from the Nutmeg Defendants, jointly and severally." Compl. at ¶ 55. The plaintiffs' damages argument seems to be that, because under ERISA the plan as opposed to the plan participants would recover for any breach, the plan has suffered damages. But the plaintiffs have based their claims on harms that the defendants have allegedly committed by unfairly stealing away

---

[1] ERISA section 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), states that a civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under ERISA section 409.

ERISA section 409, codified at 29 U.S.C. § 1109, states in relevant part that:
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

individual participants. Although the STAR Plan may have lost money when it lost participants, any alleged breach by the defendants did not wrongfully harm plan assets or the plan itself. Even if the plaintiffs had standing to sue as ERISA fiduciaries, the damages they seek amount to an aggregation of individual claims.

The STAR Plan cannot sustain an ERISA breach of fiduciary duties claim simply because the plan would recover if it actually were to successfully sue for an ERISA violation on behalf of participants. As the Second Circuit stated in *Lee*, 991 F. 2d at 1009, "[t]he Supreme Court's decision in *Russell* clearly precludes any claim by the plaintiffs . . . . In *Russell*, a beneficiary of a plan sued the plan administrator for damages arising out of the administrator's delay in processing the plaintiff's claims. . . . [T]he fiduciary duties imposed by [ERISA] run to a plan and not to individual beneficiaries. . . . *Russell* therefore bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan." The STAR Plan must still allege damages to the plan itself, not merely participants' aggregated damages. For those reasons, the plaintiffs do not adequately claim damages.

The plaintiffs have failed to show (1) that the Nutmeg defendants owe fiduciary duties to present and past STAR Plan participants, (2) that the STAR Plan or BPA meet the functional definition of fiduciaries under ERISA, or (3) that the STAR Plan itself has suffered damages. Accordingly, the plaintiffs' ERISA claims fail. There is no federal jurisdiction over the plaintiffs' claims. Because I do not have subject matter jurisdiction over those claims, the plaintiffs' complaint is dismissed.

E. <u>Pendent State Law Claims</u>

Aside from the plaintiffs' ERISA claims, they raise a number of claims based on various

state law business torts.  Under 28 U.S.C. § 1367, I may exercise supplemental jurisdiction over the plaintiffs' state law claims if they derive from a nucleus of operative fact shared by the federal law claims before me.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  However, under 28 U.S.C. § 1367(c), I may decline to exercise supplemental jurisdiction if I have dismissed all claims over which federal jurisdiction exists.

I have dismissed the federal law claims in this matter, which were all brought under ERISA.  The remaining state law claims allege a variety of business torts based on allegations of unfair competition and theft of trade secrets.  I decline to exercise supplemental jurisdiction, and dismiss the state law claims without prejudice to repleading in state court within thirty days of this ruling.

### III.     Conclusion

For the reasons discussed above, the defendants' motions to dismiss are GRANTED; and the plaintiffs' motions for preliminary injunctive relief are DENIED, without prejudice to renewal in state court.

The clerk shall close this file.

Dated at Bridgeport, Connecticut, this 25th day of February 2008.

    /s/ Stefan R. Underhill
    Stefan R. Underhill
    United States District Judge